# In the United States Court of Federal Claims

No. 25-2169C

(Filed: April 17, 2026)

|  |  |
|---|---|
| **REVELATIONS COUNSELING AND CONSULTING, LLC,** | ) ) ) ) |
| *Plaintiff,* | ) ) |
| **v.** | ) ) ) |
| **THE UNITED STATES,** | ) ) ) |
| *Defendant.* | ) ) ) |

*Jayna Marie Rust*, Thompson Coburn LLP, Washington, D.C., for Plaintiff. With her on the briefs was *Katherine S. Nucci.*

*Douglas K. Mickle*, Acting Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant. With him on the briefs were *Brett A. Shumate*, Assistant Attorney General, and *Patricia M. McCarthy*, Director. Of counsel were *Jason Fragoso*, *Reza Behinia*, and *Lauren E. Prater*, Office of the General Counsel, United States Department of Veterans Affairs, Washington, D.C.

## OPINION AND ORDER

*SOLOMSON*, **Chief Judge.**

When the aircraft carrier U.S.S. Yorktown was badly damaged during the Battle of the Coral Sea, it was estimated that it would take a minimum of three months to restore her to seaworthiness.[1] But because the United States had received intelligence of Japanese activity near Midway Island, Admiral Nimitz determined that the Yorktown had to be ready to sail immediately with the rest of the fleet.[2] The repair crew at Pearl Harbor, laboring around the clock, had the ship ready in three days — an unprecedented

---

[1] *See Pearl Harbor Repairs Crucial in Battle of Midway*, NAVSEA (June 2025), https://www.navsea.navy.mil/Resources/Battle-of-Midway/ [https://perma.cc/5RMM-VG25].

[2] *See* David Lee Bergeron, *Fighting for Survival*, U.S. NAVAL INSTITUTE, Naval History, Vol 33, No. 6 (Dec. 2019) https://www.usni.org/magazines/naval-history-magazine/2019/december/fighting-survival [https://perma.cc/QQY4-7CC6].

feat of engineering and an extraordinary dedication to service of country.[3]  Whether in response to questions regarding the Yorktown's repair, or at some other point during the American war effort, such high quality efforts and effectiveness were characterized as "good enough for government work."[4]  Thus the phrase "good enough for government work" entered our vernacular as a laudatory expression.  Unfortunately, over the years, the phrase has morphed into a pejorative describing mediocre or merely passable work performed by, or on behalf of, the government.

This bid protest case presents the question of how closely prospective offerors or bidders for government contracts — like Plaintiff, Revelations Counseling and Consulting, LLC ("Revelations") — must adhere to regulatory prerequisites, particularly those contained in a solicitation.  Is precise compliance required or is complying with the (putative) spirit of a rule "good enough for government work"?  The United States Supreme Court has repeatedly answered this question over the years.  As Justice Holmes wrote more than a century ago: "Men must turn square corners when they deal with the Government." *Rock Island, A. & L.R. Co. v. United States*, 254 U.S. 141, 143, (1920).  Indeed, "[t]his observation has its greatest force when a private party seeks to spend the Government's money." *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 63 (1984) ("Protection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of law.").

In this case, Revelations submitted a proposal, but Defendant, the United States — acting by and through the Department of Veterans Affairs ("the VA" or "the Agency") — excluded Revelations from consideration for the procurement at issue because Revelations' proposal did not comply with a mandatory solicitation requirement.  Revelations essentially claims that its compliance was "good enough" and thus the government should be ordered to go back and fully consider Revelations' proposal.

This Court agrees with the government and, in so doing, reclaims the original meaning of the phrase "good enough for government work."  When a solicitation contains a requirement — particularly one mandated by regulation — and further

---

[3] *See id.*; *Pearl Harbor Repairs Crucial in Battle of Midway*, *supra* note 1.

[4] *See* Michael W. Mutek, *Close Enough for Government Work: The Economic Utility of Teaming Agreements and the Issue of Enforceability*, 49 PUB. CONT. L.J. 423, 423–24 (2020); Steve Kelman, *Good enough for government work?*, MEDIUM (Jan. 3, 2018), https://kelmansteve.medium.com/good-enough-for-government-work-292bbeab8999 [https://perma.cc/NXN6-W38A].

provides that an agency must reject a proposal that does not comply with that requirement, a prospective offeror that charts its own course does so at its own risk.

## I.   STATUTORY AND REGULATORY BACKGROUND

The procurement in this case was set aside for veteran-owned small businesses. The small business set-aside program has been a fixture of government contracting for decades and generally reserves various contracting opportunities for small businesses that meet the program requirements. *See* 15 U.S.C. § 644(j). Not surprisingly, the Federal Acquisition Regulation ("FAR")[5] and U.S. Small Business Administration regulations have long required small business contractors receiving a small business set-aside contract to perform the majority of the contractual work. *See* FAR 19.505(b); FAR 52.219-14; 13 C.F.R. § 125.6. This restriction is commonly referred to as the "Limitations on Subcontracting" provision. It is designed to prevent a small business contractor from acting as a mere front, subcontracting nearly all the work out to a large company, thereby subverting the entire purpose of the small business set-aside. *See Accura Eng'g & Consulting Servs., Inc. v. United States*, 167 Fed. Cl. 258, 273 (2023) ("When a procurement is set aside for small businesses, other businesses are not allowed to sneak in like cowbirds in a robin's nest.").

Responding to a heightened concern over subcontracting abuses in recent years, Congress bolstered the Limitations on Subcontracting requirements by passing the Protecting Business Opportunities for Veterans Act (the "Act"), signed into law by President Trump. *See* Pub. L. No. 116-183, 134 Stat. 895-96 (Oct. 30, 2020). The Act added a new subsection, now-codified at 38 U.S.C. § 8127(l),[6] that specifically extended the general Limitations on Subcontracting requirements to veteran-owned small business set-aside procurements issued by the VA. *See* 38 U.S.C. § 8127(l)(1)(A).

The Act also imposed a new requirement, authorizing the VA to award a contract only after an offeror executes a formal certification regarding its future compliance with the Limitations on Subcontracting (*i.e.,* upon award):

---

[5] The FAR is codified at Title 48, Ch. 1, of the Code of Federal Regulations ("C.F.R.").

[6] This provision was initially codified at 38 U.S.C. § 8127(k).

> The Secretary may award a contract under this section only after the Secretary obtains from the offeror a certification that the offeror will comply with the [Limitations on Subcontracting] requirements described in paragraph (1)(A) if awarded the contract. Such certification shall—
>
> (A) specify the exact performance requirements applicable under such paragraph; and
>
> (B) explicitly acknowledge that the certification is subject to section 1001 of title 18 [relating to potential criminal consequences for making false statements to the U.S. government].

38 U.S.C. § 8127(l)(2).  In implementing the Act, the Agency amended the VA Acquisition Regulation ("VAAR") to reflect this new express certification requirement.  *See VA Acquisition Regulation: Acquisition Planning; Required Sources of Supplies and Services; Market Research; and Small Business Programs*, 87 Fed. Reg. 62,999 (Oct. 18, 2022).  The final rule included three key changes grounded in the new statutory certification requirements: two amendments to existing VAAR provisions, as well as a new mandatory solicitation provision.

*First*, the VA amended VAAR 819.7003, which specifies the eligibility requirements for VA government contractors, to reflect Congress's renewed focus on subcontracting abuses.  That VAAR provision emphasizes that an otherwise eligible veteran-owned small business must comply with the Limitations on Subcontracting, as well as the nonmanufacturer rule,[7] and must submit a certification to that effect, in order to receive an award.  *See* VAAR 819.7003(d) ("An offeror shall submit a certification of compliance to be considered eligible for any award under this part.").  The VAAR thus

---

[7] The nonmanufacturer rule is part of the Small Business Act and applies to a small business concern "that, for a particular procurement, do[es] not manufacture [its] own products but rather suppl[ies] the product of another business."  *Bitscopic, Inc. v. United States*, 166 Fed. Cl. 677, 689 (2023; *see also* 13 C.F.R. § 121.406(b).  Such a business concern is not disqualified from bidding on a small business set-aside contract so long as it "represent[s] that it will supply the product of a domestic small business manufacturer or processor, unless a waiver of such requirement is granted[.]"  15 U.S.C. § 637(a)(17)(B)(iv).

explicitly ties an offeror's eligibility for a VA contract award to the express certification Congress required in the Act. *Id.*

*Second*, the VA amended VAAR 819.7004 to reiterate that no award could be made to an offeror unless it submitted a certification as part of its proposal. VAAR 819.7004(b) now underscores that, absent a formal certification, an offeror's proposal shall not be considered for award:

> Pursuant to the authority of 38 U.S.C. [§8127(l)(2)], a contracting officer may award a contract under this subpart only after obtaining from the offeror a certification that the offeror will comply with the limitations on subcontracting requirement as provided in the solicitation and which shall be included in the resultant contract (see 819.7011).
>
> (1) The formal certification must be completed, signed and returned with the offeror's bid, quotation, or proposal.
>
> (2) The Government will not consider offers for award from offerors that do not provide the certification with their bid, quotation, or proposal, and all such responses will be deemed ineligible for evaluation and award.

VAAR 819.7004(b).[8]

*Third*, the VA added VAAR 852.219-75, a proposal instruction clause that sets forth the specific certification that offerors are required to complete as part of their proposals. This VAAR proposal instruction clause not only supplies the precise language of the formal certification, but also spells out exactly what the offeror is certifying and the penalties associated with violating the certification. By executing the certification, the offeror certifies that if awarded the contract "it will comply with the limitations on subcontracting requirement as provided in the solicitation and the resultant contract." VAAR 862.219-75(a)(1). The new VAAR clause then specifies three types of contracts —

---

[8] The VAAR here actually references the "authority in 38 U.S.C. [§] 8127(k)(2)," but, as mentioned above, the correct statute is now found at 38 U.S.C. § 8127(l)(2). *See supra* note 6.

services, general construction, and special trade construction — with specific and different limits on the percentage of permissible subcontracting. VAAR 862.219-75(a)(1)(i-iii).[9]

Next, VAAR 862.219-75(a) details the consequences for violating the certification, including the Limitations on Subcontracting:

> (2) The offeror acknowledges that this certification concerns a matter within the jurisdiction of an Agency of the United States. The offeror further acknowledges that this certification is subject to Title 18, United States Code, Section 1001, and, as such, a false, fictitious, or fraudulent certification may render the offeror subject to criminal, civil, or administrative penalties, including prosecution.
>
> (3) If VA determines that an SDVOSB/VOSB [Service-Disabled Veteran-Owned Small Business] awarded a contract pursuant to 38 U.S.C. [§] 8127 did not act in good faith, such SDVOSB/VOSB shall be subject to any or all of the following:
>
>> (i) Referral to the VA Suspension and Debarment Committee;
>>
>> (ii) A fine under section 16(g)(1) of the Small Business Act (15 U.S.C. [§] 645(g)(1)); and
>>
>> (iii) Prosecution for violating section 1001 of title 18.

VAAR 852.219-75(a)(2)-(3).[10]

---

[9] There are checkboxes next to each category; the contracting officer is required to "check the appropriate box below based on the predominant NAICS code assigned to the instant acquisition as set forth in FAR 19.102." VAAR 852.219-75(a)(1).

[10] VAAR 852.219-75 also provides that, by signing the certification, the offeror is acknowledging that "by submission of its offer and award of a contract it may be required to provide copies of documents or records to VA that VA may review to determine whether the offeror complied with the limitations on subcontracting requirement specified in the contract." VAAR 852.219-75(b).

Finally, immediately prior to the specified formal certification language, VAAR 852.219-75 includes yet another express warning to offerors:

> The *formal certification* must be completed, signed and returned with the offeror's bid, quotation or proposal. The Government will not consider offers for award from offerors that do not provide the certification, and all such responses will be deemed ineligible for evaluation and award.

VAAR 852.219-75(d) (emphasis added).  The referenced formal certification is found at the end of VAAR 852.219-75, and includes a specified (blank) signature block:

> Certification
>
> I hereby certify that if awarded the contract, [insert name of Offeror] will comply with the limitations on subcontracting specified in this clause and in the resultant contract.  I further certify that I am authorized to execute this certification on behalf of [insert name of Offeror].
>
> Printed Name of Signee: _____
> Printed Title of Signee: _____
> Signature: _____
> Date: _____
> Company Name and Address: _____

VAAR 852.219-75.

The last sentence of the formal certification contains an unusual but important addition.  The signee, in certifying that he or she is authorized to execute the certification on behalf of the offeror (the "authorization clause"), provides further assurance to the government that the would-be contractor has committed to the requirements contained in the provision.  That is because either the contractor will have a more difficult time disclaiming knowledge of the certification's requirements or, if it turns out that the signee lacks the requisite authority to sign the certification, he or she would at least face potential

7

personal criminal and civil liability for the false certification.  *See* VAAR 852.219-75(2), (3); *United States v. Kestenbaum*, 908 F.Supp.2d 364, 379 (E.D.N.Y. 2012) (finding defendant had "knowingly, intentionally, and willfully made false statements to the government" because "[defendant's] signature . . . attested that he had both knowledge of the penalties for false statement provided by 18 U.S.C. § 1001 and knowledge that this financial statement is submitted by [him] to affect action by the United States Department of Justice" (internal quotations omitted)).  Either way, the  the authorization clause provides the government with an extra measure of assurance, however minimal that might be.

Accordingly, at least two important Congressional and VA aims are achieved by the plain terms of VAAR 852.219-75.  *First*, because only offerors who properly complete, sign, and submit the certification are considered for award, the VA has greater assurance that the offeror will comply with the specifics of the Limitations on Subcontracting. *Second*, because the exact penalties are specified and acknowledged by the signee, the government can more easily and efficiently prosecute violators.[11]

---

[11] "For those who consider legislative history useful," *Tapia v. United States*, 564 U.S. 319, 331 (2011), at least one member of Congress supporting the Act made a statement confirming what the plain text of the Act and common sense indicate:

> [The Act] would give the Department of Veterans Affairs and the Office of Inspector General badly needed tools to stop companies that exploit contracting loopholes to take work from legitimate veteran-owned small businesses. . . . Unfortunately, there have long been some fly-by-night small businesses that obtain set-aside contracts only to pass on all of the work to large businesses while collecting the profits. This is illegal, but the law is difficult to enforce. This legislation requires a written certification in every contract proposal that the company will comply with the law. A false statement constitutes fraud, and the bill makes it the Inspector General's explicit responsibility to investigate such suspected fraud.

166 Cong. Reg. H1181 (Feb. 25, 2020) (statement of Rep. D. Phillip Roe).

## II.    FACTUAL AND PROCEDURAL BACKGROUND[12]

### A. The Solicitation

On August 27, 2025, the VA issued Solicitation No. 36C10X25R0032 (the "RFP" or "Solicitation")  for "Veterans Experience Office ('VEO') Contact Center Staffing."  AR 1. The VEO contact center "is a critical resource for our nation's Veterans, their families, caregivers, and survivors seeking assistance with VA benefits, healthcare appointments, crisis support, and other essential veteran-related services," or, in simpler terms, a call center operated by the VA.  ECF No. 13-1 at 1.  The Solicitation was set aside for SDVOSB entities.  *Id.*  That means that the contractor must be a small business within the definition of the applicable North American Industry Classification System ("NAICS") code identified in the Solicitation and must be owned by a veteran who is no longer fit for combat because of some disability suffered in the course of his or her duties.  *See* 38 U.S.C. § 8127; 15 U.S.C. § 8127(q); FAR 52.219-9.  The VA issued the Solicitation once the incumbent performer no longer qualified as a small business and thus was ineligible to continue performance.  ECF No. 20 ("Tr.") at 70:6-9.

The Solicitation and its Performance Work Statement ("PWS") contemplated a 12-month base period of performance, plus four option years.  *See* AR 117-18.  The Solicitation provided that the procurement was a 100% set-aside for SDVOSB concerns. AR 1.  Proposal submissions were due by September 11, 2025.  *Id.*  The Solicitation was amended four times, and through one of those amendments, the due date was extended until September 15, 2025.  AR 116.  The PWS described the required call-center support locations, personnel, and tasks to be performed.  For instance, the contractor would be required to provide 312 call agents and 55 senior-level staff, who would be able to handle requests related to "directory assistance," "VA benefits and services," and "troubleshooting," among other subjects.  AR 118-19.  The Solicitation required offerors

---

[12] This background section constitutes this Court's findings of fact drawn from the administrative record and other filings to which the non-filing party did not object.  Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"), covering judgment on the administrative record, "is properly understood as intending to provide for an expedited trial on the record" and requires this Court to "make factual findings from the record evidence as if it were conducting a trial on the record."  *Bannum, Inc. v. United States*, 404 F.3d 1346, 1354, 1356 (Fed. Cir. 2005).  Other factual findings are contained in other sections of this opinion.  *See e.g.*, *infra*, Sec. V.  Citations to the administrative record, ECF No. 15, are denoted as "AR" followed by the page number bolded in the lower right-hand corner of each page of the administrative record.

to submit three proposal volumes: Volume I — Experience; Volume II — Past Performance; and Volume III — Price, amendments, terms and conditions, and assumptions.  AR 188.

In three distinct places, the Solicitation instructed offerors to include VAAR 852.219-75's completed and signed formal certification.  First, the SF 1449 cover page to the Solicitation provides that "[o]fferors must complete and sign VAAR Clause 852.219-75."  AR 1.  Second, Section C — the Contracts Clauses section — includes the full text of VAAR 852.219-75, which, as noted *supra*, includes a warning to offerors that failure to certify will result in rejection of the offeror's bid.  Section C also contains the formal certification language and signature block for an authorized representative of the offeror to complete and sign.  AR 171-73.  Third, in Section E — the Solicitation Provisions section — offerors were instructed to include the "[c]ertification of compliance as required by VAAR 852.219-75" in Volume III of their proposals.  AR 188 (RFP § E.1.A.8).

### B.  Revelations' Proposal

On September 15, 2025, Revelations submitted its proposal with all three required volumes.  AR 228-43.  In the third paragraph on the first page of Volume III,  Revelations included certification language that Revelations now asserts satisfies VAAR 852.219-75.  AR 231 ("Certification of Compliance").   In particular, Revelations' homebrew certification language was as follows:

> In accordance with VAAR 852.219-75, Revelations certifies that if awarded the contract, it will comply with the limitations on subcontracting requirement as provided in the solicitation and the resultant contract.

AR 231.  The problem is that Revelations did not include the full text of the VAAR provision, or even the full text of the final certification block, and entirely omitted the authorization clause.  AR 228-43.  And while the signature of Lawrence Gaines — Revelations' Chief Administrative Officer — appears in various places in the proposal, those signatures were for other distinct affirmations or to sign off on the entire proposal, generally.  But there is no signature — either from Mr. Gaines or anyone else — specifically affixed to, or otherwise associated with, Revelations' certification language.

10

The VA rejected Revelations' proposal without a substantive evaluation. AR 244. In an October 9, 2025, letter, the Agency notified Revelations that its proposal had "been reviewed and is no longer being considered for award." *Id.* ("Please be advised that the Government will not consider subsequent revisions of your proposal, and the proposal as it stands, is eliminated from competition.").

Revelations timely requested a debriefing, which the VA provided on October 16, 2025. *See* ECF No. 16-1 at 8. The debriefing letter explained that Revelations' "proposal was determined to be non-compliant with the solicitation instructions. As a result, [Revelations'] proposal could not be evaluated under any non-price or price factors." *Id.* That letter included the specific reason that Revelations was removed from consideration: "[Revelations] did not complete and sign VAAR 852.219-75, Limitations on Subcontracting – Certificate of Compliance for Services and Construction[.]" *Id.* The Agency concluded that "[t]his omission constitutes a material failure to comply with solicitation requirements, rendering your firm's proposal unacceptable. Because this mandatory clause was not provided, your proposal was removed from further consideration. As a result, no non-price or price factors were evaluated." *Id.*

On October 26, 2025, Revelations submitted an agency-level protest to the VA, pursuant to VAAR 852.233-71, Alternate Protest Procedure, requesting review of the VA's rejection of Revelations' proposal. *See* ECF No. 16-1 at 11-19.[13] On December 9, 2025, the VA denied Revelations' protest, finding that Revelations "fail[ed] to make all the necessary representations and was not signed as required by VAAR 852.219-75." AR 246. The VA further determined that "the signature provided by Revelations on the cover letter of Volume III does not satisfy the specific certification requirement of VAAR 852.219-75." *Id.* Accordingly, the VA "agree[d] that it was appropriate to eliminate Revelations from further consideration in this procurement for failing to submit the required certification at VAAR 852.219-75." *Id.*

## C. Procedural History

On December 29, 2025, Revelations filed its complaint in this Court, pursuant to 28 U.S.C. § 1491(b), challenging the VA's decision eliminating Revelations from the VEO

---

[13] Revelations' agency-level protest asserted many of the same arguments that Revelations now asserts before this Court. AR 245-47.

procurement.  ECF No. 1 ("Compl.").  Revelations also filed a motion for a temporary restraining order and preliminary injunction ("TRO/PI"), ECF No. 3.  On January 5, 2026, the government responded to Revelations' TRO/PI motion and also moved to dismiss the complaint.  ECF No. 13.  This Court held a telephonic hearing on January 6, 2026.  ECF No. 12.  During the telephonic hearing, this Court proposed that, because this case turns on a relatively straightforward and discrete legal issue, and because it does not involve an extensive administrative record typical of bid-protest actions, this Court would expedite briefing and decide this discrete legal issue to resolve this case on the merits. *See* ECF No. 14 at 1.  The parties agreed.  *Id.*  As a result, this Court determined that the TRO/PI motion was moot and set a briefing schedule.  *Id.*  The Court also noted that it "would treat the government's motion to dismiss, ECF No. 13, as its opening motion for judgment on the administrative record ('MJAR')."  ECF No. 14 at 2 (discussing ECF No. 13 ("Def. MJAR")).

On January 16, 2026, Revelations filed its MJAR.  ECF No. 16 ("Pl. MJAR") .  On January 23, 2026, the government filed its response to Revelations' MJAR.  ECF No. 18. The Court held oral argument on the parties' motions on February 3, 2026.  ECF No. 20.

## III.    JURISDICTION & STANDING

This Court has jurisdiction over procurement challenges pursuant to the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, 110 Stat. 3870.  *See* 28 U.S.C. § 1491(b).  The Tucker Act vests this Court with

> jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1).  "An interested party is an actual or prospective bidder whose direct economic interest would be affected by the award of the contract."  *Digitalis Educ. Sols., Inc. v. United States*, 664 F.3d 1380, 1384 (Fed. Cir. 2012).

No party challenges either this Court's jurisdiction or Revelations' standing to pursue its case. Nevertheless, this Court has an independent duty to verify that it has jurisdiction over this matter and that Revelations has standing to pursue its action. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'" (alteration in original) (quoting *Allen v. Wright*, 468 U. S. 737, 750 (1984))); *see also* RCFC 12(h)(3).

Here, the Court finds that it does have jurisdiction, and that Revelations has standing. Revelations was an actual offeror, as it submitted a timely proposal before the RFP's deadline. AR 229. Further, Revelations plausibly alleges facts in its complaint that demonstrate, along with its MJAR, that but for the VA's alleged errors, the Agency would have found Revelations' proposal acceptable, and Revelations would have been allowed to compete for the procurement. *See* Compl.; Pl. MJAR. Therefore, Revelations has a "non-trivial competitive injury" — its exclusion from the procurement process — that can be redressed if the Court finds agency error. *See Piedmont Propulsion Sys., LLC v. United States*, 167 Fed. Cl. 72, 89 (2023) (citing *Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1349 (Fed. Cir. 2013)). And in a pre-award bid protest like this one, *without an evaluation record*, that is all that is required. *See Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1361-62 (Fed. Cir. 2012) (holding that because "it is difficult for a prospective bidder/offeror to make the showing of prejudice . . . required in post-award bid protest[s]," a direct economic interest exists if the protestor has alleged "a non-trivial competitive injury which can be redressed by judicial relief").[14]

Accordingly, this Court will proceed to the merits of Revelations' challenge.[15]

---

[14] "A higher standard, under which the protestor must show that 'but for the error, it would have had a substantial chance of securing the contract,' applies where 'there is an adequate factual predicate' to apply it." *eSimplicity, Inc v. United States*, 162 Fed. Cl. 372, 381 n.9 (2022) (quoting *Savantage Fin. Servs., Inc. v. United States*, 150 Fed. Cl. 307, 317–18 (2020)). Here, although Revelations submitted a bid, there is not sufficient factual development for the Court to apply the "substantial chance" test — for example, the Agency has not yet established a competitive range to which the Court can compare Revelations' proposal. *See Orion Tech.*, 704 F.3d at 1349.

[15] This Court considers prejudice at both the standing and merits stages of a case:

> For standing, we presume the party bringing a bid protest will succeed on the merits of its claim and ask whether it has alleged an injury (or prejudice) caused by the procuring agency's actions. But once we find that a party has standing, we

## IV.    STANDARD OF REVIEW

In actions challenging a government procurement pursuant to 28 U.S.C. § 1491(b) — colloquially referred to as bid protests[16] — this Court reviews "the agency's actions according to the standards set forth in the Administrative Procedure Act, 5 U.S.C. § 706." *Nat'l Gov't Servs., Inc. v. United States*, 923 F.3d 977, 981 (Fed. Cir. 2019); *see also PGBA, LLC v. United States*, 389 F.3d 1219, 1226 (Fed. Cir. 2004) ("[W]hen read together, [28 U.S.C. §] 1491(b)(4) and [5 U.S.C. §] 706(2)(A) compel the conclusion that section 1491(b)(4) only incorporates the arbitrary or capricious standard of review of section 706(2)(A)."). That APA standard, in turn, requires the Court to determine "whether the agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Nat'l Gov't Servs.*, 923 F.3d at 981(citing 5 U.S.C. § 706(2)).

In general, there are two bases for this Court to find that an agency action was arbitrary and capricious: "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Weeks Marine*, 575 F.3d at 1358. The first basis requires the Court to determine "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (internal quotations omitted). For the second basis, the "disappointed bidder must show 'a clear and prejudicial violation of applicable statutes or regulations.'" *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1333 (Fed. Cir. 2001) (quoting *Kentron Hawaii, Ltd. v. Warner*, 480 F.2d 1166, 1169 (D.C. Cir. 1973)).

---

must turn to the merits of the party's claim and determine whether it can prove it was prejudiced based on the record evidence.

*Am. Relocation Connections, L.L.C. v. United States*, 789 F. App'x 221, 226–27 (Fed. Cir. 2019) (internal citations omitted).

[16] Procurements may solicit bids, proposals, or quotations. *See Tolliver Grp., Inc. v. United States*, 151 Fed. Cl. 70, 91 (2020); *see also* FAR 2.101 ("Offer means a response to a solicitation that, if accepted, would bind the offeror to perform the resultant contract. Responses to invitations for bids (sealed bidding) are offers called 'bids' or 'sealed bids'; responses to requests for proposals (negotiation) are offers called 'proposals'; however, responses to requests for quotations (simplified acquisition) are 'quotations,' not offers.").

An agency's decision lacks a rational basis — and thus is arbitrary and capricious — where the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (alteration in original) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)); *see also Tinton Falls Lodging Realty, LLC v. United States*, 800 F.3d 1353, 1358 (Fed. Cir. 2015). While the agency's explanations must be its own, as the Court cannot supply post-hoc rationalization for agency action, those explanations need only provide a sufficient (even if imperfect) basis for the agency's decision. *See Snyder v. McDonough*, 1 F.4th 996, 1005 (Fed. Cir. 2021) ("Although 'we may not supply a reasoned basis for the agency's action that the agency itself has not given, we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" (quoting *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974))); *Harrington v. Dep't of Veterans Affs.*, 2025 WL 655546, at *3 (Fed. Cir. Feb. 28, 2025) ("[W]e do not require perfect explanations [and] will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." (quoting *In re Nuvasive, Inc.*, 842 F.3d 1376, 1382–83 (Fed. Cir. 2016))).

As explained above, judgment on the administrative record, pursuant to RCFC 52.1(c), "is properly understood as intending to provide for an expedited trial on the record." *Bannum*, 404 F.3d at 1356. That Rule requires the Court "to make factual findings from the record evidence as if it were conducting a trial on the record." *Id.* at 1354. Accordingly, this Court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence contained in the administrative record. *Id.* at 1356–57.

## V.    DISCUSSION

The sole issue in this case is straightforward:  did the VA properly reject Revelations' proposal for failing to comply with VAAR 852.219-75 — and related Solicitation provisions — or did the VA act arbitrarily and capriciously in rejecting Revelations' proposal because any error or omission in Revelations' putative certification was immaterial?  *See E.W. Bliss Co. v. United States*, 77 F.3d 445, 448 (Fed. Cir. 1996) ("Although it may be true that a proposal which ultimately fails to conform to material terms of the solicitation should be considered unacceptable, where a defect in a bid is

trivial or a mere formality, not material, the bid is not required to be rejected out of hand." (internal quotations omitted)).

This Court has defined "a material solicitation requirement" as one "that (1) is express in the solicitation, and (2) serves a substantive purpose." *See DigiFlight, Inc. v. United States*, 150 Fed. Cl. 650, 657 (2020) (internal quotations omitted). This Court has further defined "substantive purpose" to mean something that is "important to the government's evaluation of the offer, is binding on the offeror, or has a more than negligible impact on the price, quantity, or quality of the bid." *ManTech Advanced Sys. Int'l, Inc. v. United States*, 141 Fed. Cl. 493, 506-07 (2019) (citing *Bus. Integra, Inc.*, 116 Fed. Cl. 328, 333 (2014), *ST Net, Inc. v. United States,* 112 Fed. Cl. 99, 106–110 (2013), *Blackwater Lodge & Training Ctr., Inc. v. United States*, 86 Fed. Cl. 488, 505 (2009), and *Furniture by Thurston v. United States*, 103 Fed. Cl. 505, 518 (2012)).

Mandatory minimum requirements are *per se* material. As this Court explained in *DigiFlight*:

> [S]o-called "mandatory minimum requirements" are always — and by definition constitute — material solicitation requirements. That is so because a mandatory minimum requirement is one "that a proposal must meet ... in order to be eligible for evaluation or, conversely, that failure to comply with ... will lead to outright rejection of the proposal."

150 Fed. Cl. at 657 (quoting *ManTech*, 49 Fed. Cl. at 67). In other words, when a solicitation expressly hinges the acceptance or rejection of a proposal on whether it adheres to a particular requirement, that requirement is, by definition, material. Moreover, a government agency is bound to adhere to solicitation provisions as written; where a solicitation requires that a non-compliant proposal be excluded from a competition, the agency ordinarily cannot waive the compliance failure.[17]

This Court therefore must answer two questions. First, did the Solicitation expressly convey the VAAR 852.219-75 certification requirement and provide a "clear

---

[17] An agency "must follow the terms of [its] solicitation when awarding a contract." *Assessment and Training Solutions Consulting Corporation v. United States*, 173 Fed. Cl. 123, 127 (2024) (quoting *IAP World Servs., Inc. v. United States*, 152 Fed. Cl. 384, 397 (2021)).

statement that omitting [those] requirement[s] will result in rejection of the proposal without evaluation[?]"  *MSC Indus. Direct Co., Inc. v. United States*, 140 Fed Cl. 632, 644 (2018).    And second, did Revelations' failure to adhere to the exact certification requirements render its proposal fatally non-compliant? *Cf. DigiFlight*, 150 Fed. Cl. at 657 ("A proposal's failure to satisfy a material, or mandatory minimum, solicitation requirement is a material error.").

### A. The Solicitation's Inclusion of VAAR 852.219-75 Made Clear that an Offeror's Failure to Provide the Required Certification Would Result in Rejection of the Proposal Without Evaluation

The first question is easily resolved.  As discussed above, the Solicitation was crystal clear in requiring offerors to include the formal certification.  AR 1; 171-3; 188. Indeed, VAAR 852.219-75 — in the paragraph immediately preceding the formal certification language — unambiguously warned offerors that the "government will not consider offers . . . that do not provide the certification, and all such responses will be deemed ineligible for evaluation and award."  AR 172 (VAAR 852.219-75(d)).

As described earlier, the entire text of VAAR 852.219-75 was included in the Solicitation. AR 171-73.  The SF 1449 — the first page of the Solicitation — also instructs offerors to submit the formal certification.    AR 1.    And the Solicitation lists the "certification of compliance as required by VAAR 852.219-75" as among the requirements that proposals "shall contain."  AR 188 (emphasis in original).

Simply put, this Court cannot imagine how the Solicitation could have made it any clearer that offerors must submit the formal certification to be considered for award.

There is also good reason for the VA's wanting the formal certification to be provided in the precise manner and form prescribed in the regulation:  to reduce the possibility that a contractor violating the Limitations on Subcontracting can later contend that it was somehow unaware of the compliance requirements.  Plainly, the government wants its enforcement actions to be as easy possible.  In that regard, the government frequently litigates False Claims Act cases where, for example, subjective scienter must be proven (and is often disputed). *See United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 749 (2023) ("The FCA's scienter element refers to respondents' knowledge and subjective beliefs — not to what an objectively reasonable person may have known or

17

believed."); *United States ex rel. Omni Healthcare Inc. v. MD Spine Solutions LLC*, 160 F.4th 248, 265 (1st Cir. 2025) (finding that relator failed to prove that defendant had the requisite subjective intent that would invite FCA liability).  This Court cannot fault the government for attempting to eliminate any scienter-related defense by not only requiring a formal certification, but also mandating that any deviation from the certification instructions results in disqualification.  Indeed, Congress has provided for such certifications in other contexts for similar purposes.  *See, e.g.*, 41 U.S.C. § 7103(b) (requiring contractors to certify contract-related claims against the government in excess of $100,000).

Even if the Solicitation had not expressly required a proposal's elimination for failing to comply with VAAR 852.219-75, the obvious purpose of the certification makes it a material solicitation requirement.  The upshot is that the VA is required to eliminate proposals that do not contain a proper certification; and, at a minimum, the VA may reasonably exclude such a non-compliant proposal from further consideration.

### B.  Revelations Failed to Submit the Required Formal Certification

The next question for this Court is whether Revelations' putative certification, within Volume III of its proposal, complied with VAAR 852.219-75.  Based on the parties' arguments in their briefs and during oral argument, this Court specifically must decide whether Reveleations' proposal was properly excluded for failing in any one of three ways to comply with VAAR 852.219-75:  (1) Revelations' failure to include the complete text of VAAR 852.219-75; (2) Revelations' failure to include the prescribed authorization clause; and (3) Revelations' failure to submit a certification with its own signature specifically for the certification itself (as opposed to relying on a signature for the proposal generally).  As explained below, this Court need not decide the first issue because Revelations' latter two failures so clearly support the government's decision to exclude Revelations' proposal from further consideration.

### 1.  Was Revelations required to submit the full text of VAAR 852.219-75 that precedes the formal certification?

This Court is far from certain that an offeror is required to include the entire text of VAAR 852.219-75 in its proposal with the signed formal certification.

The thrust of the government's argument is that the full clause of VAAR 852.219-75 must be included because it contains all the terms to which the signee is certifying. Def. MJAR at 8-12. By omitting the full text of VAAR 852.218-75, the government claims that Revelations' proposal "did not confer on the VA the rights provided by the formal certification." *Id.* at 12. For instance, the government asserts that Revelations "did not consent to the VA's jurisdiction, nor did it comply with the statutory mandate that it 'explicitly acknowledge that the certification is subject to section 1001 of title 18.'" *Id.* at 12 (quoting VAAR 852.219-75(a)(3)). And, according to the government, Revelations also "did not formally certify that its failure to 'act in good faith' would subject it to other administrative sanctions to include '[r]eferral to the VA Suspension and Debarment Committee' or a 'fine under section 16(g)(1) of the Small Business Act (15 U.S.C. [§] 645(g)(1)).'" *Id.* at 9 (quoting VAAR 852.219-75(a)(3)). Revelations also "did not agree to 'cooperate fully and make available any documents or records as may be required to enable VA to determine compliance.'" *Id.* at 12 (quoting VAAR 852.219-75(c)). Finally, the government argues that VAAR 852.219-75(a)(1)(i-iii) contains three alternative circumstances, and "requires offerors to select applicable certifications that are specific to the characteristics of the offeror." *Id.* at 11. And because Revelations' bare proposal did not contain the full clause of VAAR 852.219-75 it failed in this aspect as well.

These arguments are unpersuasive. First, it is the contracting officer, and not the offeror, who selects the applicable checkbox in VAAR 852.219-75(a)(1)(i-iii) for a solicitation. VAAR 852.219-75(a)(1) ("*Contracting Officer check the appropriate box below based on the predominant NAICS code assigned to the instant acquisition as set forth in FAR 19.102.*" (emphasis in original)). And indeed, the contracting officer in the Solicitation did so — there was nothing for Revelations to select. AR 171. This is similarly true of all the supposed acknowledgements and "rights" that an offeror would "confer on the VA." Def. MJAR at 12. There are no separate signatures or initials required for each provision or term of VAAR 852.219-75; just the formal certification at the bottom to which the signee must affix a signature. If an offeror properly signs the formal certification, then no further acknowledgment seems necessary.

But there are other reasons — none of which the government raised, let alone developed — that might have persuaded this Court that an offeror must reproduce in its proposal the full text of VAAR 852.219-75. For instance, the formal certification language supports the government's position. The formal certification's first sentence provides: "I hereby certify that if awarded the contract, [insert name of Offeror] will comply with the

19

limitations on subcontracting specified in this clause and in the resultant contract." VAAR 852.219-75.  If submitted without the complete text of VAAR 852.219-75, the phrase "specified in this clause" is arguably rendered meaningless:  what requirements in what clause is the offeror signing up to?  And in that regard, a certification that does not include the full text of VAAR 852.219-75 undermines the entire purpose of the formal certification.  Absent the full provision, the government would have a harder time holding a contractor responsible, in terms of scienter, for a violation of the Limitations on Subcontracting because its terms and penalties would not be explicitly identified above the signature.  Because Congress wanted the VA to ensure compliance with the Limitations on Subcontracting, it makes sense that the VA would want the certification to expressly state all of the requirements, terms, and penalties in VAAR 852.219-75, rather than simply the text of the formal certification.  Including the entire provision is a more surefire way of proving that the signee actually read and understood what the contactor agreed to.

Even if the full text were required to be included, however, Revelations seems to have at least attempted to incorporate the substance of the VAAR provision by reference. Revelations' putative certification reads: "*In accordance with VAAR 852.219-75*, Revelations certifies that if awarded the contract, it will comply with the limitations on subcontracting requirement as provided in the solicitation and the resultant contract." AR 231 (emphasis added).  This reference to the correct section of the VAAR suggests that Revelations intended to be bound by the terms of that provision.  And Revelations' certification attempt also distinguishes it from *Superior Optical*, where the offeror did not reference the correct VAAR provision, and instead only vaguely said that it would "be in full compliance with the limitations on subcontracting as a manufacturer as described in 13 CFR 125.6."  173 Fed. Cl. at 254.

This Court need not resolve whether the government or Revelations generally has the better argument,[18] however, because, as explained below, Revelations' failure to include the authorization clause — not to mention the lack of a separate signature for the required formal certification — dooms its case.

---

[18] Prudence dictates that future prospective offerors or bidders include the full text of VAAR 852.219-75 above the formal certification and signature block in order to remove all doubt that a proposal is compliant.

### 2. Was Revelations required to include the authorization clause from the formal certification language?

Revelations' failure to include the last line of the formal certification — that the certifier is authorized to bind the offeror — is not disputed. Instead, Revelations argues that this portion of the formal certification is immaterial and its absence cannot justify the rejection of its proposal. *See* Pl. MJAR at 13-14. According to Revelations, no harm could come by the omission of the authorization clause. *See* Pl. MJAR at 13-14; Tr. at 6:14-8:10. Put differently, what difference does it make to the government whether someone asserts they have authority to bind the offeror or not? After all, if the employee executing the certification were someone not authorized to bind the company, then the authorization clause would not be enforceable either. In other words, if a low-level employee had signed the certification instead of a senior corporate official authorized to sign, the government would be no better off with the authorization clause than without it. That is because if the government were to pursue Revelations over some alleged breach of the Limitations on Subcontracting, Revelations would still potentially be able to claim that it lacked knowledge that it was bound by the relevant VAAR provision because no proper corporate officer ever saw or signed the certification.

All of that is true enough. But the government in such a case could more easily pursue the certifier, individually, for a false certification or statement. Whether or not the government would actually indict or otherwise pursue the unauthorized certifier is irrelevant. What matters is that the government *could* do so. And that means the authorization clause serves a purpose. When the executed certification contains the authorization clause, the government has a greater assurance that the offeror will actually be bound because the certifier makes himself or herself vulnerable to civil and criminal liability. *See, e.g.*, *United States v. Yermian*, 468 U.S. 63, 65 (1984) (upholding a jury verdict of guilty of making false statements pursuant to 18 U.S.C. § 1001 after defendant knowingly signed a fraudulent certification). It may seem silly to Revelations that the VA is interested in such marginal additional assurance, but that does not mean it is *de minimis* and, therefore, may be omitted.[19]

---

[19] The Court notes — and the government readily agrees — that a missing letter or even word in the required certification would not constitute (material) noncompliance. Tr. at 4:23-5:25. In other words, if there were a scrivener's error of some sort — *e.g.*, a missing letter or word — there would be little doubt that it would constitute a proper certification. *Id. De minimis* errors ordinarily should not result in a proposal's rejection or this Court's enjoining an award. *Cf. Grumman Data*

### 3. Was Revelations required to submit an individualized signature that is tied to, and thus specifically affirms, the formal certification?

What is also clear to this Court is that an offeror must submit a certification with an independent and specific signature affirming the signee's understanding and acceptance of the certification, and the consequences of non-compliance or breach.

Revelations argues that the Solicitation did not define what "signed' means and therefore the definition of "signature" in FAR 2.101 controls. Pl. MJAR at 16. And because FAR 2.101 provides that a signature "indicates a present intention to authenticate the writing" this suggests that any signature anywhere on the proposal suffices to bind the offeror to the entire writing. *Id.* This Court is not sure that the definition can do the heavy lifting Revelations wants it to, but, in any event, Revelations ignores the plain text of VAAR 852.219-75 and the Solicitation.

First, VAAR 852.219-75 specifies a signature block for offerors to fill in. There are lines for printed name, title, signature, date and company name and address, making it abundantly clear that an offeror should complete the formal certification as it appears. If offerors could simply submit the certification text within their proposal and rely on a signature found elsewhere, then the entire empty signature block would be superfluous.

Furthermore, in the instructing paragraph immediately preceding the formal certification, the VAAR commands that "[t]he formal certification must be completed, *signed and returned* with the offeror's bid, quotation, or proposal." VAAR 852.219-75(d) (emphasis added). Again, if an offeror were permitted to simply submit the certification relying on some omnibus signature, it wound render the "signed and returned" language superfluous. *See Nielsen v. Preap*, 586 U.S. 392, 414 (2019) ("[T]he interpretive canon

---

*Sys. Corp. v. Dalton*, 88 F.3d 990, 1000 (Fed. Cir. 1996) ("We have held that de minimis errors do not require the overturning of an award. *De minimis* errors are those that are so insignificant when considered against the solicitation as a whole that they can safely be ignored and the main purposes of the contemplated contract will not be affected if they are." (quoting *Andersen Consulting v. United States*, 959 F.2d 929, 935 (Fed. Cir. 1992))). But where a solicitation requires an agency to exclude an offeror even for a *de minimis* error, such a provision must be challenged prior to the due date for proposals, as explained below.

against surplusage [is] the idea that 'every word and every provision is to be given effect [and that n]one should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence.'" (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012))).

Other instructions in the Solicitation confirm this understanding. For instance, in the Section titled "Instruction to Offerors," the Solicitation makes clear that an "authorized official of the prime Contractor shall not only sign the SF 1449," but also all "amendment(s) *and all certifications requiring signature*." AR 190 (emphasis added). And in Box 20 on the SF 1449, the Solicitation again instructs offerors to "complete and *sign* VAAR Clause 852.219-75," again directing that a separate signature must accompany the certification itself. AR 1 (emphasis added).

The individualized signature requirement also furthers the certification's purpose. Because a signee to a specific clause would have a more difficult time pleading ignorance of its terms, this Court is not surprised that the VAAR would require a signature on the formal certification itself, rather than permit reliance on a signature of someone who had possibly not read the entire proposal carefully, let alone VAAR 852.219-75.

Despite the great weight of textual evidence supporting the need for an individualized signature, Revelations insists that any signature in its proposal applies to all its contents. *See* Pl. MJAR at 16. For this proposition, Revelations relies on various cases from the Supreme Court and this Court that appear to generally suggest that "a writing" refers to an "entire document," and that a signature anywhere in the proposal "applie[s] to the entire document." *Id.* at 17. That may be true, but it still misses the point. This Court is not now engaged in a trial to determine if Revelations is liable pursuant to 18 U.S.C. § 1001 for making false statements. Indeed, in some circumstances an offeror could be successfully prosecuted without having the individualized signature that the VAAR demands. But the possibility of future consequences is not the standard by which this Court reviews compliance with material solicitation requirements. The relevant question is whether the Solicitation expressly required an individualized signature, and in that respect Revelations' arguments cannot overcome the plain text of the VAAR and the Solicitation's instructions.

And to the extent that Revelations is suggesting that the individualized signature is a *de minimis* requirement that cannot rationally be considered a material element of the

23

formal certification, Revelations is certainly mistaken.  The individualized signature makes it far more likely that the signee has read and accepted the terms of VAAR 852.219-75 and would likely make it far easier to prosecute violators — two of the primary aims of the amended Limitations on Subcontracting.  *Cf. Get Loud Arkansas v. Jester*, -- F.4th --, 2026 WL 881736, at *5 (8th Cir. Mar. 31, 2026) (Stras, J., dissenting) ("Handwritten signatures help ensure that those [signing] are who they claim to be and understand what they are doing.").  That signees will devote more time to digesting terms that they must individually sign is almost too obvious to question.  It is easy to imagine the CEO of an offeror — a presumably busy person — farming out the review and preparation of the company's proposals to proposal writers, project managers, and perhaps a few lawyers and accountants.  It would surely not be the first time that a senior executive, trusting his or her subordinates, signed something without carefully reviewing in detail all of the contents of an entire document.  Indeed, reliance on subordinate experts may be entirely reasonable under the circumstances.  *Cf. United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1275 (D.C. Cir. 2010) (rejecting district court's decision for "drawing no distinction between the knowledge of corporate officers and that of potentially thousands of ordinary employees, including the knowledge of all employees in the 'collective pool' of information imputed to the corporation").

But whether or not the government might eventually prevail in a fraud, False Claims Act, or false statements action against a corporation or its executives individually is not the question here.  What *is* important is the Agency's goal to prevent just that situation by making it more likely that the signing officer carefully reads the entire VAAR provision, including the formal certification, and personally acknowledges that the offeror can comply with the Limitations on Subcontracting contained therein.

And as to future prosecution, the government — contrary to Revelations' assertions — is not required to risk having to prosecute the more difficult case: where a signature is contained elsewhere in a proposal and the government must then arguably demonstrate that the signee had knowledge of the requirements in VAAR 852.219-75.  Instead, the government obviously prefers to prosecute the easier case: where the signee provided an individualized signature on the certification thereby reducing any doubt that 18 U.S.C. § 1001 applies.  *See Superior Optical*, 173 Fed. Cl. at 255 ("[A] certification can have the effect of eliminating ambiguity and waiving legal defenses even if it does not otherwise change the law.").  That is why the VA mandated the individualized

24

signature for the certification and that is why Revelations was not compliant when it provided only the generalized signatures elsewhere in its proposal.

> **4. Revelations' failure to include the individualized signature and authorization clause in its proposal was material error even if a proper formal certification would have been included in the final contract.**

At oral argument, Revelations insisted that all the foregoing concerns are of no consequence. Tr. at 33:18-36:5. This is because the absence of an individualized signature and authorization clause will be cured in the resulting contract. The resulting contract — should Revelations be awarded it — would contain the formal certification and bind Revelations (and whoever signs on its behalf) to all the terms and penalties contained in VAAR 852.219-75. *See id.* In other words, according to Revelations, a noncompliant proposal is irrelevant; the awardee will have signed a proper certification contained in the resulting contract, binding the offeror as strictly as the government wants.

While Revelations appears to be correct on this score, *see* VAAR 819.7004(b), that does not save Revelations' proposal here. The VA — or any agency demanding strict compliance with certification requirements in a *proposal* — is seeking assurance *at the beginning of the procurement process* that the offeror selected for award can and will be able to execute the certification and comply with it. *See* Tr. at 35:18 — 36:17 (Counsel for Revelations is "not saying it's irrational" for the Agency, "before [it] evaluate[s]" a proposal, to "know that [offerors are] signing up to [the Limitations on Subcontracting] in advance" and "[s]o the certification has to be in the proposal" given what "the clause itself says"). This Court cannot second-guess an agency's required level of assurance at the proposal step of the procurement process; the VA's requirement that a formal certification contain the authorization clause, along with an individualized signature, yields the VA a higher level of assurance — that is not a *de minimis* requirement.

The bottom line is that the VA is entitled to know at the beginning of the procurement process — before pouring time and effort into evaluating an offeror's proposal — that an offeror can and will ultimately comply with VAAR 852.219-75, and is prepared to ultimately certify that in a formal contract. Revelations essentially asserts that its effort was good enough. The government is not satisfied, and the government is right not to be. The VA is entitled to maximum assurances at the proposal stage. Revelations did not give the VA that assurance. Accordingly, the VA acted reasonably at

25

a minimum, and within its authority, in excluding Revelations' proposal from further consideration for failing to comply with VAAR 852.219-75, as the Solicitation directed. AR 1; 173; 188.

### 5. At best, Revelations simply complains about a patent ambiguity in the Solicitation and its protest is therefore time-barred.

Even if Revelations had some textual or logical support for its reading, that only means there is a patent ambiguity, and Revelations was required to raise that issue before it submitted its proposal. *See, e.g.*, *Per Aarsleff A/S v. United States*, 829 F.3d 1303, 1312 (Fed. Cir. 2016) ("A defect is patent if it is 'an obvious omission, inconsistency or discrepancy of significance.'" (quoting *E.L. Hamm & Assocs., Inc. v. England*, 379 F.3d 1334, 1339 (Fed. Cir. 2004))); *VSolvit, LLC v. United States*, 166 Fed. Cl. 201, 217 (2023) (citing *Per Aarsleff*, 829 F.3d at 1312). Therefore, to the extent that Revelations argues that the Solicitation arguably supports its position, Revelations' argument is barred by the *Blue & Gold* doctrine. In *Blue & Gold Fleet, L.P. v. United States*, the Federal Circuit held that a protester that "has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims." 492 F.3d 1308, 1313.[20]

This Court is unsure what more the VAAR could have done to put an offeror on notice of the certification requirements other than saying the words "this requires a separate signature" and "the sentence regarding self-authorization is not pointless." But if Revelations remained unsure about exactly what was required, it should have raised its concerns directly to the VA, or filed a protest, before the proposal due date. Revelations did not do so, and therefore must live with the VA's reasonable reading of its Solicitation — which this Court agrees is the correct reading as a matter of law. *See Accura*, 167 Fed. Cl. at 270 (citing *Blue & Gold*, 492 F.3d at 1315, and *COMINT Sys. Corp. v. United States*, 700 F.3d 1377, 1382–83 (Fed. Cir. 2012)). Even if Revelations could make a colorable argument that the independent signature and self-authorization were not

---

[20] This doctrine "was established to prevent contractors from taking advantage of the government, protect other bidders by assuring that all bidders bid on the same specifications, and materially aid the administration of government contracts by requiring that ambiguities be raised before the contract is bid, thus avoiding costly litigation after the fact." *Blue & Gold*, 492 F.3d at 1313–14 (citation omitted).

express requirements of the Solicitation, because Revelations did not raise those questions earlier, they are now waived.

## VI.    CONCLUSION

Revelations' putative attempt at including the required certification was not "good enough for government work."  The government is entitled to expect offerors to satisfy every requirement in the Solicitation.  That is particularly true where, as here, the relevant Solicitation provision, VAAR 852.219-75, incentivizes compliance with the eventual contract, dissuades those offerors who will not be able to perform from wasting the government's time and resources, and streamlines and enhances any eventual legal remedy the government might later seek against parties who breach the Limitations on Subcontracting.  Because Revelations did not comply with the Solicitation's explicit instructions, including VAAR 852.219-75's certification requirements, the VA did not act arbitrarily and capriciously in eliminating Revelations' proposal from consideration.

By enacting the Protecting Business Opportunities for Veterans Act, Congress sought to enforce strict rules for small business contractors.  In this case, the VAAR's certification requirements, as overprotective as they may be, help accomplish Congress's aims of facilitating compliance with the Limitations on Subcontracting and punishing those who do not comply.  Thus, when it comes to those requirements, "almost" is not quite "good enough." Accordingly, Revelations' MJAR is **DENIED**.  The government's MJAR is **GRANTED**.  The Clerk of this Court is directed to enter judgment for the government.

**IT IS SO ORDERED**.

s/Matthew H. Solomson
Matthew H. Solomson
Chief Judge

27